UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOW PAGES PHOTOS, INC.,

    Plaintiff,

v.                                                  Case No: 8:17-cv-764-T-36JSS

YP, LLC and PRINT MEDIA LLC,

    Defendants.
_____/

## **ORDER**

THIS MATTER is before the Court on Plaintiff Yellow Pages Photos, Inc.'s Motion for Discovery Sanctions Against Defendants YP, LLC and Print Media, LLC ("Motion") (Dkt. 124), with Defendants' response in opposition (Dkt. 140) and Plaintiff's reply in support (Dkt. 147).[1] On June 19, 2019, the Court held a hearing on the Motion. For the reasons set forth below, the Motion is denied.

## **BACKGROUND**

Plaintiff is the alleged holder of several federally registered copyrights over numerous stock photographic images. (Dkt. 45 ¶¶ 15–20.) In this action, Plaintiff alleges Defendants have infringed on its copyrights by using Plaintiff's images online and in print advertisements without authorization. (Dkt. 45 ¶¶ 24–31, 38–43.) On December 14, 2017, Plaintiff moved to compel Defendants to produce discovery related to the allegedly infringing advertisements and damages. (Dkt. 71 at 11–21; Dkt. 72 at 9–19.) After directing the parties to confer on the discovery requests (Dkt. 80), the Court held a hearing on the motions on March 13, 2018. (Dkt. 87.) Following the hearing, the Court entered an order granting the motions, noting that "Defendants have no

---

[1] An unredacted version of Plaintiff's reply is filed under seal. (Dkt. 153.)

remaining objections to the [requests for production], Defendants have produced responsive documents on a monthly basis since December 2017, and Defendants agree to complete their remaining production in April 2018." (Dkt. 89 at 1.) The Court directed the parties to "continue meeting and conferring through May 31, 2018, and notify the Court if a discovery status conference is requested within 14 days thereafter." (Dkt. 89 at 2.)

Months passed until the Court *sua sponte* scheduled a discovery status conference to take place on October 15, 2018. (Dkt. 95.) In anticipation of the hearing, Plaintiff filed a notice alleging discovery deficiencies. (Dkt. 96.) Defendants responded with a notice alleging that Plaintiff was manufacturing discovery disputes prior to the status conference. (Dkt. 97.) At the hearing, the Court scheduled deadlines to produce disputed discovery. (Dkt. 99.) Additionally, the Court scheduled additional discovery status conferences in November and December of 2018 and ordered the parties to file status reports in anticipation of those hearings. (Dkt. 100.) In the November status report, Plaintiff noted that it was reviewing discovery produced in October, but reported that, as far as it was aware, Defendant had complied with its discovery obligations. (Dkt. 104.) Defendants similarly reported compliance with the Court's order. (Dkt. 105.) At the hearing, the Court set additional deadlines to ensure timely production of discovery. (Dkt. 107.)

In anticipation of the December status conference, Plaintiff once again noted no discovery deficiencies. (Dkt. 110.) Plaintiff noted that it was reviewing discovery produced in November but noted that it had "no reason to doubt the veracity of Defendants' representations regarding" the discovery produced, and its review so far indicated that Defendant's representations were accurate. (Dkt. 110 at 2.) Defendant once again reported compliance with the Court's orders and ongoing production of the requested discovery. (Dkt. 111.) At the hearing, the parties assured the Court that discovery was progressing and that corporate representative depositions were scheduled

for January 2019.  (Dkt. 112.)  The Court ordered the parties to meet and confer regarding any objections to the deposition topics.  (Dkt. 112.)

Discovery closed on March 15, 2019 (Dkt. 94), with no further motions or indications of discovery disputes.  On April 22, 2019, Defendants filed their motion for summary judgment.  (Dkt. 119.)  On April 29, 2019, prior to responding to the motion for summary judgment, Plaintiff filed the instant Motion, which asks the Court to preclude Defendant from raising certain defenses based on deficient discovery responses and inadequately prepared corporate representatives.  (Dkt. 124.)

## APPLICABLE STANDARDS

Under Federal Rule of Civil Procedure 37, if a party "fails to obey an order to provide or permit discovery," the Court may "issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii).  The Court "has broad authority under Rule 37 to control discovery" and "sanctions are intended to prevent unfair prejudice to the litigants and [e]nsure the integrity of the discovery process."  *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999).  However, the "exclusion of otherwise admissible evidence probative of a core issue" is warranted, "if ever, only in an instance of the most egregious, purposeful, calculated, and otherwise irremediable enormity by a litigant or by counsel or by both and, even then, only if the evidence establishing the enormity and the malevolence that created the enormity is nothing less than distinct and unmistakable."  *United States v. CMC II LLC*, No. 8:11–cv–1303–T–23TBM, 2016 WL 7665764, at *1 (M.D. Fla. Dec. 1, 2016).  Additionally, sanctions are not generally warranted

where a party has shown that it made all reasonable efforts to comply with the court's order. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994).

## ANALYSIS

The Court agrees with Defendants that the Motion is due to be denied as untimely. As the background discussed above demonstrates, the Court has held numerous hearings and discovery status conferences in this case. However, the Motion—filed more than a month after the close of discovery—raises several alleged discovery deficiencies for the first time. Plaintiff argues that the delay is due to rolling production of discovery. (Dkt. 147.) However, the rolling production of documents does not explain the delay in challenging the testimony of Defendants' corporate representatives more than three months after the depositions and more than one month after the close of discovery. Plaintiff makes no justification for this delay.

Additionally, although the Court did contemplate rolling production of certain contracts and revenue information, the Court ordered production "on a rolling basis to complete the discovery within the discovery deadline." (Dkt. 107 at 1.) To the extent the parties agreed to rolling production of images beyond the discovery deadline, the parties assumed the risk of incomplete discovery. *See* Middle District Discovery (2015) at I.F.1. ("Counsel, by agreement, may conduct discovery after the formal completion date but should not expect the Court to resolve discovery disputes arising after the discovery completion date.").

Even if considered on the merits, Plaintiff has not established a basis for discovery sanctions. Plaintiff's argument that discovery is incomplete is either speculative or refuted by the record. For example, Plaintiff argues that Defendants must have additional high-resolution images because they produced low-resolution images. (Dkt. 124 at 8–9.) However, throughout this litigation, Defendants have explained that they "do not have the technological capability to search

their systems for [Plaintiff's] images." (Dkt. 140 at 9.) Instead, the parties agreed that Defendants would search for Plaintiff's images in the locations where Defendants store stock images. (Dkt. 140 at 9.) Defendants have established that they searched the "art library where they store stock images to identify and collect any images that could have been sourced from" Plaintiff. (Dkt. 140-2 at 2.) This is sufficient to satisfy Defendant's discovery obligations. *See* Middle District Discovery (2015) at III.A.5. (explaining that a party has "complied with the duty to respond to a document request" if it has "[e]nsured a reasonable inquiry with those persons and a reasonable search of those places likely to result in the discovery of responsive documents" and produced those documents").

Next, Plaintiff argues that Defendants' revenue spreadsheets are deficient because they "fail to include advertisements that [Plaintiff] identified to Defendants as containing" Plaintiff's images. (Dkt. 124 at 11.) In its reply, Plaintiff identifies only one advertisement allegedly missing from the spreadsheets, a magnetic tip-on ad. (Dkt. 147 at 3.) But at the hearing, Defendants established that Plaintiff never properly identified an infringing image in the tip-on ad. Plaintiff also presumes that the spreadsheets are inaccurate because they list zero revenue for certain ads. (Dkt. 124 at 11.) However, Defendants' witnesses testified as to possible reasons they would charge nothing for an advertisement. (Dkt. 140-9 at 27–30.)

Plaintiff also argues that Defendants' production of customer contracts is deficient. (Dkt. 124 at 12–13.) Plaintiff raised this issue during previous discovery status conferences. Plaintiff presumes that Defendants must be withholding information because the number of contracts does not correspond to the number of ads and because several contracts are missing pages. (Dkt. 124 at 13.) However, Defendants have explained multiple times that "not every advertisement is accompanied by a separate contract" and in many cases only the "line items and customer

signatures" are kept in Defendants' systems. (Dkt. 140 at 12–13.) Defendants maintain that they produced all contracts kept in the ordinary course of business and Plaintiff has not shown that the production is deficient.

Finally, Plaintiff argues that the corporate representatives were not adequately prepared. (Dkt. 124 at 15–17.) Plaintiff takes issue with the representatives' inability to answer certain questions on "Defendants' core defense," that they are licensed to use Plaintiff's images. (Dkt. 124 at 15.) However, "[d]epositions, including 30(b)(6) depositions are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:11–cv–694–FtM–29UAM, 2013 WL 12155461, at *1 (M.D. Fla. Nov. 18, 2013) (internal quotations omitted). A corporate representative "who is not a lawyer, should not be expected to present orally a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by the corporate party." *Stoneeagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13–CV–2240–T–33MAP, 2015 WL 12843846, at *2 (M.D. Fla. Apr. 29, 2015) (internal quotations omitted). Instead, a corporation must only "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Gamestop, Inc. v. Loan Ranger Acquisitions, LLC*, No. 8:13–cv–1149–T–36AEP, 2014 WL 12621334, at *2 (M.D. Fla. Oct. 28, 2014) (internal quotations omitted).

In this case, Defendants established that the two corporate representatives "engaged in substantial preparation" to provide over twelve hours "of detailed testimony" regarding seventy-nine different topics. (Dkt. 140 at 16.) Indeed, the deposition transcripts confirm that the corporate representatives made significant effort to prepare for the depositions and testified sufficiently

concerning the deposition topics. (Dkt. 140-3 at 14–23; Dkt. 140-9 at 11–30; Dkt. 124-2; Dkt. 124-8; Dkt. 124-13.) Plaintiff has not shown that Defendants' corporate representatives were inadequately prepared.

Therefore, Defendants have shown that they have made a good faith effort to comply with all discovery obligations and court orders. Throughout the lengthy discovery period in this case, Defendants made "40 separate productions of more than 30,000 documents, totaling more than 2 million pages," a significant portion of which were not directories. (Dkt. 140 at 4.) To the extent additional undisclosed information exists, Defendants will be unable to rely on that information at trial. *See* Fed. R. Civ. P. 37(c)(1). But Plaintiff has not established that sanctions—particularly the extreme sanction of foreclosing legal defenses—are warranted. As such, the Motion, including Plaintiff's request for attorney's fees and costs, is denied.[2]

Accordingly, it is **ORDERED** Plaintiff Yellow Pages Photos, Inc.'s Motion for Discovery Sanctions Against Defendants YP, LLC and Print Media, LLC (Dkt. 124) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, on August 14, 2019.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[2] Defendants also request attorney's fees and costs for defending the Motion. (Dkt. 140 at 18–20.) However, a request for affirmative relief must be made in a motion that complies with the local rules, not in a response in opposition to a motion. Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (finding that the plaintiffs never properly moved for leave to amend because they merely requested it in one of their memoranda). Even if properly presented, the Court would similarly deny Defendants' request.