UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOWPAGES PHOTOS, INC.,

     Plaintiff,

v.                                      Case No: 8:17-cv-764-T-36JSS

YP, LLC and PRINT MEDIA LLC,

     Defendants.

_____/

## ORDER

This matter comes before the Court upon Defendants YP LLC and Print Media LLC's
Motion for Summary Judgment (Doc. 175), Plaintiff's response thereto (Doc. 135), Defendants'
reply (Doc. 141), Plaintiff's Notice to Take Judicial Notice (Doc. 133), and Defendants' response
thereto (Doc. 169).  The Amended Complaint alleges two counts for copyright infringement, one
against Defendant YP, LLC, and one against Defendant Print Media LLC.  Doc. 45 ¶¶ 23-48.  In
their joint Motion for Summary Judgment, Defendants argue that they are entitled to summary
judgment and dismissal of Plaintiff's Amended Complaint with prejudice because they were
permitted to use Plaintiff's copyrighted images under the licenses.  Doc. 175.  Plaintiff responds
that Defendants are not among the entities permitted to use the licenses and that, even if they were,
Defendants exceeded the scope of the licenses.  Doc. 135.

In the Motion for Judicial Notice, Plaintiff requests that this Court judicially notice a
Quarterly Report that AT&T Inc. filed with the Securities and Exchange Commission pursuant to
Section 13 or 15(d) of the Securities and Exchange Act of 1934 for the quarterly period that ended
June 30, 2012.  Doc. 133.  Defendants do not object to the motion.  Doc. 169.  The Court, having

considered the motions and being fully advised in the premises, will grant Defendants' Motion for Summary Judgment in part and deny it in part, and grant Plaintiff's Motion for Judicial Notice.

With respect to Defendant YP, LLC, the undisputed evidence shows that it was permitted to use the licenses at issue in this case, and that none of its actions fell outside the scope of the license or otherwise invalidated its use of the images under the license. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on the issue of whether Defendant YP, LLC was permitted to use the licenses. As a matter of law, Defendant YP, LLC's use of Plaintiff's copyrighted images covered by the licenses did not constitute copyright infringement. However, because the evidence is disputed as to whether Defendant YP, LLC used only images covered by the licenses, the Court cannot grant summary judgment as to Count I of the Amended Complaint.

With respect to Defendant Print Media LLC, the undisputed evidence shows that it was permitted to use images covered by the "Software License and Maintenance—Snap-Out Agreement 20071211.071.C Between Yellow Pages Photo, Inc. And AT&T Services, Inc." (the "ATT License"), and, as a matter of law, any use of such images did not constitute copyright infringement. Doc. 157-6. However, the language of the License Agreement between L.M. Berry and Company, and all affiliates owned or owning the same, and Yellow Pages Photos, Inc. (the "Berry License") (Doc. 157-2) is ambiguous with respect to whether all affiliates of L.M. Berry and Company were covered by the license. The Court, therefore, cannot determine as a matter of law whether Defendant Print Media LLC's use of such images constituted copyright infringement. Additionally, the evidence is disputed as to whether all images were covered by the licenses. Accordingly, the Court will deny summary judgment as to Count II of the Amended Complaint.

Regarding Plaintiff's request for Defendants' profits from any copyright infringement, the undisputed evidence shows that Defendants did not profit from their use of YPPI's copyrighted

images. Accordingly, the Court will grant summary judgment on this issue. Plaintiff may not claim Defendants' profits as damages.

Additionally, pursuant to Federal Rule of Civil Procedure 56(f), the Court directs the parties to advise the Court (1) whether all images used by Defendant YP, LLC were covered by the licenses; and (2) whether all images used by Defendant Print Media LLC were covered by the ATT License, so that the Court may determine whether summary judgment should be granted or denied, in whole or in part, as to the claims contained in the Amended Complaint. The Court also directs Defendants to advise the Court whether it intends to proceed on its counterclaims for declaratory judgment and attorneys' fees and costs. *See* doc. 51 at 13-14.

## I. BACKGROUND AND FACTS[1]

### A. The Claims

Plaintiff Yellowpages Photos, Inc. ("YPPI") filed a Complaint against Defendants YP LLC d/b/a "The Real Yellow Pages" ("Yellow Pages") and Print Media LLC, d/b/a Print Media Solutions, LLC ("Print Media") (collectively, "Defendants") alleging that Defendants infringed on at least 230 of YPPI's federally registered copyrighted images. Doc. 45 ¶ 1. YPPI alleges that Defendants profited from such use by publishing ads in their telephone directories using the images without license or permission from YPPI. *Id.*

Plaintiff alleges one count for direct copyright infringement against Yellow Pages. *Id.* ¶¶ 23-36. In that count, Plaintiff alleges that since April 2014, Yellow Pages copied, published, transmitted, and used at least 230 of YPPI's copyrighted images in connection with Yellow Pages'

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including depositions, interrogatory responses, declarations, and exhibits (Doc. 119-122; Doc. 135; Doc. 141), as well as the parties' Stipulation of Agreed Material Facts (Doc. 143).

sale, publication, distribution, and use of advertisements in web-based telephone directories. *Id.* ¶ 24. Additionally, YPPI alleges that Yellow Pages copied, published, transmitted, and used YPPI's copyrighted images in connection with Yellow Pages' creation, publication, and sale of websites for Yellow Pages' customers. *Id.* ¶ 25. YPPI further alleges that between April and August 2014, Yellow Pages copied, published, transmitted, and used YPPI's copyrighted images in connection with Yellow Pages' sale, publication, distribution, and use of advertisements in print-based telephone directories. *Id.* ¶ 26. YPPI alleges that it did not license or otherwise authorize Yellow Pages to copy, transmit, or use any of YPPI's copyrighted images in connection with the infringing advertisements, and that Yellow Pages' actions were either knowing or due to willful ignorance. *Id.* ¶¶ 31, 33. YPPI also alleges that Yellow Pages profited from its copyright infringement. *Id.* ¶ 35.

In addition, YPPI alleges one count for direct copyright infringement against Print Media. *Id.* ¶¶ 37-48. YPPI alleges that since August 1, 2014, Print Media has copied, published, transmitted, and used at least 230 of YPPI's copyrighted images in connection with Print Media's sale, publication, distribution, and use of advertisements in print-based telephone directories. *Id.* ¶ 38. Additionally, YPPI alleges that it did not license or otherwise authorize Print Media to copy, transmit, or use any of YPPI's images in connection with the infringing advertisements, and that Print Media's actions were either knowing or due to willful ignorance. *Id.* ¶¶ 43, 45. YPPI also alleges that Print Media profited from its copyright infringement. *Id.* ¶ 47.

In the Answer, jointly filed by Defendants, they admit that certain YPPI images have been used in web-based advertisements bearing "YP" branding, but contend that all such uses were permitted under one or more license agreements with YPPI, or its affiliates, predecessors, or principal. Doc. 51 ¶¶ 24, 38. Defendants deny infringing on YPPI's copyrights, knowingly,

willfully ignorantly, or otherwise. *Id.* ¶¶ 27-30, 39-43. Defendants also deny having profited from any alleged copyright infringement. *Id.* ¶¶ 35-47.

Defendants assert two counterclaims against YPPI. *Id.* ¶¶ 1-27. Defendants contend in their counterclaims that YPPI has been unable to sell a new license for its photos since 2008, so it has made its business litigation. *Id.* ¶ 3. Defendants list various cases filed by YPPI, two of which were settled, two of which resulted in recovery for YPPI, and one of which was dismissed on grounds of res judicata, judicial estoppel, and collateral estoppel. *Id.* ¶ 4.

Defendants allege that they had rights to a license originally entered into between AT&T Advertising, L.P. ("ATT Advertising") and YPPI based on a series of mergers and name changes of companies that made Defendants affiliates of the licensee, the ATT License. *Id.* ¶¶ 11-17. Defendants also allege that an additional license between YPPI and an affiliate entitled Defendants to use the images identified in the Complaint, the Berry License. *Id.* ¶ 18. Based on these allegations, Defendants seek a declaratory judgment regarding their rights under the ATT License, and claim entitlement to attorneys' fees under copyright law. *Id.* ¶¶ 19-27.

### B. Undisputed Facts

#### 1. Corporate Structures

This case revolves around various businesses that have been involved in mergers and name changes. Accordingly, the Court will begin by reviewing the relevant changes. In doing so, the Court first notes the parties to the original two licenses that are at issue.

The first agreement, the Berry License, was entered into between L.M. Berry and Company and YPPI. Doc. 119-2. YPPI is owned by W. Trent Moore, who is also the sole stockholder, officer, and director. Doc. 45 ¶ 15. The Berry License was later amended to partially assign L.M. Berry's rights to The Berry Company LLC, with the agreement of YPPI. Doc. 119-4.

The second agreement, the ATT License, was entered into between YPPI and AT&T Services, Inc ("ATT Services"). Doc. 119-6 at 1. The invoices for the ATT License were to be sent to ATT Advertising. *Id.* ATT Advertising was the operating entity in AT&T Inc.'s yellow pages business unit that was responsible for producing, publishing, and creating advertisements for "The Real Yellow Pages" telephone directories. Doc. 121 ¶ 5. ATT Services was an AT&T, Inc. affiliate that procured contracts and provided administrative services to AT&T Inc.'s subsidiaries. *Id.* ¶ 6.

Each of the below changes regarding the companies occurred after these licenses were established.

As is relevant to the Berry License, L.M. Berry and Company was a part of the yellow pages business unit of BellSouth, which was acquired by AT&T Inc. on December 29, 2006. Doc. 121 ¶ 8. On May 9, 2012, L.M. Berry and Company was converted to L.M. Berry and Company LLC. Doc. 157-11 at 3. L.M. Berry and Company LLC merged into and became YP Southeast Advertising & Publishing LLC on December 31, 2014, a subsidiary owned by Defendant Yellow Pages. Doc. 121 ¶¶ 9-10; Doc. 157-14 at 3; Doc. 157-10 at 2. That same day, YP Southeast Advertising & Publishing LLC changed its name to YP Advertising & Publishing LLC. Doc. 157-15 at 3.

As is relevant to the ATT License, on May 21, 2012, ATT Advertising amended its name to YP Advertising LP, a subsidiary owned by Defendant Yellow Pages. Doc. 157-12 at 3; Doc. 157-10 at 2. Subsequently, on December 31, 2014, YP Advertising LP merged into and became YP Southeast Advertising & Publishing LLC, or under its changed name, YP Advertising & Publishing LLC. Doc. 157-13 at 3.

According to AT&T, Inc.'s Form 10-Q, filed with the Securities and Exchange Commission, on April 7, 2012, AT&T reached an agreement to sell its advertising solutions business to Cerberus Capital Management, L.P, which is an affiliate of AT&T Inc. Doc. 135-4 at 9; Doc. 133-1 at 27. The sale was completed on May 8, 2012, and AT&T Inc. obtained, as a result of the sale, a 47% equity interest in the new entity YP Holdings LLC. *Id.* at 3. YP Holdings LLC is the holding company for Defendant Yellow Pages. Doc. 157-10.

Defendant Print Media was formed on August 1, 2014 under the common ownership of L.M. Berry and Company LLC and YP Advertising L.P. Doc. 121 ¶ 11. As of January 1, 2015, YP Advertising & Publishing LLC, and Defendants were all under common ownership with Yellow Pages as the sole member of YP Advertising & Publishing LLC. *Id.* ¶¶ 12-13.

## 2. The Berry License

The Berry License was an agreement entered into between L.M. Berry and Company, "and all affiliates owned or owning the same" (collectively referred to as "Berry") and YPPI in June 2006 for a one-year license for use of YPPI's products and services which states it would be governed by Ohio law. Doc. 157-2. Pursuant to the Berry License Agreement, Berry obtained "the non-exclusive right to copy, crop, manipulate, modify, alter, reproduce, create derivative works of, transmit, and display the Digital Media an unlimited number of times in any and all media for any purpose . . . ." *Id.* ¶ 1.2.1. The Digital Media could also be reproduced by Berry's subcontractors. *Id.* ¶ 1.2.2. Berry's rights to the Digital Media, and to use the Digital Media, were "worldwide and perpetual." *Id.* ¶ 1.2.3.

The Berry License limited the number of users who could "be involved in the process of creating modified images or templates" to 48 employees. *Id.* ¶ 1.3. However, Berry was permitted to provide "any given number" of employees with a "view-only library" of the Digital Media. *Id.*

Additionally, the Berry License prohibited Berry from sublicensing, selling, assigning, conveying, or transferring any of its rights under the Agreement. *Id.* ¶ 1.4.1.

The Berry License provided that it would be binding on the parties, their successors, administrators, heirs, and permitted assigns. "Notwithstanding anything to the contrary in th[e Berry License], the rights and obligations of either party under th[e] Agreement" were permitted to "be assigned, sublicensed or otherwise transferred, without written consent of the other party, to a third party that acquire[d] substantially all of the assets or business of a party to th[e] Agreement or as the result of a merger, acquisition or other similar corporate transaction involving one of the parties to th[e] Agreement." *Id.* ¶ 9.

Berry and YPPI amended the Berry License on April 2, 2007 (the "First Amendment to the Berry License") to increase the number of seat licenses provided by the Agreement to 93 employees. *Id.* at 6.

The Berry License was inadvertently assigned to The Berry Company, LLC, on February 1, 2008. Doc. 157-4 at 3. Accordingly, on April 23, 2008, The Berry Company entered into a Partial Assignment of Agreement and Consent with L.M. Berry and Company (the "Berry Assignment") under which The Berry Company assigned 45 seat licenses back to L.M. Berry and Company. *Id.* YPPI agreed to the assignment. *Id.*

### 3. The ATT License

On December 12, 2007, ATT Services and YPPI entered into the ATT License, which was signed by ATT Services on behalf of ATT Advertising. Doc. 119-6. The agreement states that "its performance and all disputes between the parties of any nature whatsoever arising out of or in connection with the subject matter hereof shall be governed by the laws of the State of Texas . . . ." *Id.* at 5. Additionally, the agreement provides that it was "the entire integrated agreement

between [YPPI] and AT&T with respect to the subject matter hereof," and that it would "supersede all prior oral and written discussions, agreements and understandings of the Parties, if any, with respect hereto." *Id.*at 5. The ATT License has an expiration date of December 31, 2010. *Id.* at 3.

The ATT License contains a description which provides: "The existing quantity of 2,150 photographs ("Digital Images") is hereby extended with licensing for Unlimited Users. The seat license applies to AT&T and its subsidiaries. . . ." Doc. 119-6 at 3. Additionally, the ATT License states that subject to payment by "AT&T", YPPI granted

> to AT&T and its affiliates a non-exclusive, non-transferable, royalty-free, perpetual license to: (i) copy the Digital Images on to AT&T's server for unlimited End Users (ii) use the Digital Images in AT&T's business locations and for AT&T's business purposes only provided that such use is in accordance with the Specifications detailed in this Agreement; (iii) make copies of the Digital Images for archive or backup purposes.

*Id.* Additionally, "AT&T's rights to the Digital Images [were] worldwide and perpetual." *Id.* The ATT License further states that AT&T could

> incorporate any Digital Image(s) into its own original work and publish, display and distribute the work in any media provided that a copyright notice [wa]s included in any electronic or digital work reflecting on the copyright ownership of both AT&T and Licensor as follows: "Copyright ©20__ [AT&T] and its licensors. All rights reserved."

*Id.* AT&T could also copy, crop, graphically alter, or combine the subject images with other images, or creatively adapt the images to make a final image that would be incorporated into a product or webpage. *Id.* However, AT&T could "not resell, sublicense or otherwise make available the Digital Image(s) for use or distribution separately or detached from a product or Web page." *Id.* Similarly, AT&T was not permitted to "rent, lease, sublicense or lend the digital images, or a copy thereof, to any other person or legal entity." *Id.* at 4.

Regarding access to the images, the ATT License states that "AT&T may place the Digital Images on their internal intranet or other common server for access and use by licensed End Users

only." *Id.* An "End User" is "defined as an individual that utilizes the high resolution Digital Images for the specific purpose of creating a final image that will be used in a print or electronic product(s). These End Users are generally defined as designers and artist." *Id.* However, AT&T was permitted to "copy any or all of the images to a browser CD ROM or other catalog media for the specific purpose of allowing view only access, such as but not limited to, AT&T's Sales personnel or Advertising Customers." *Id.*

The ATT License was subsequently amended on October 31, 2008 to include a per image download price. *Id.* at 11. The ATT License was amended a second time in March 2009 to provide that YPPI would supply certain images "on the CD collection know[n] by the parties as the 'LMBerry/Nashville Collection.' " *Id.* at 15.

### C.    Disputed Issues

#### 1.    Evidence Regarding the ATT License

Moore testified that he recalled AT&T referring to the entity responsible for publishing the AT&T yellow pages directories as the "Real Yellow Pages," as well as various other names, including ATT Services. Doc. 157-5 at 72:5-11. However, Moore also testified that he believed ATT Advertising was the entity that would use the library to create advertisements for yellow pages directories. *Id.* at 5-13. His understanding regarding ATT Services' involvement was based exclusively on the ATT License. *Id.* at 72:15-18. He further testified that his discussions with AT&T led him to believe ATT Services were the ones publishing phone books because "they were the one calling [him], they were the one wanting images, they were the one wanting the license." *Id.* at 73:7-10. The people he communicated with included Terry Thornton, Mildred Moore, Robyn Brown, and Denise Davis. *Id.* at 73:13-19.

Moore testified that in his proposals for the license, he used the name ATT Advertising, included statements such as that ATT Advertising would be able to enhance its library's dynamic growth, and proposed that ATT Advertising license YPPI images. *Id.* at 88:16-21, 89:15-20, 91:4-25, 92:13-23; 102:16-18, 105:4-6; *see also* 157-9 at 6, 9, 11. However, Moore further testified that he was not sure that he knew which AT&T entity would maintain the library of images, but that he understood that ATT Services would execute the contract. *Id.* at 88:24-89:3. He stated that he did not believe ATT Advertising was the name of the entity that would maintain the merged library, but that it would maintain the library under a d/b/a or some other name. *Id.* at 90:1-6. Overall, Moore indicated that AT&T used many names, he could not distinguish which entity was which, and that it would be fair to say that AT&T would have more knowledge regarding its corporate entities and which functions they performed. *Id.* at 94:13-18.

Thornton was the point person who communicated with Moore. Doc. 157-7 at 50:2-6. He testified that the agreement was intended to be structured between YPPI and ATT Advertising. *Id.* at 112:16-19. Thornton stated that ATT Advertising was the entity that received YPPI's images under the ATT License, used YPPI's images and created ads, and paid for the YPPI images. *Id.* at 264:9-17.

William Clenney, Defendants' corporate representative, testified that ATT Services is a subsidiary that provides administrative services to other ATT subsidiaries. Doc. 157-8 at 105:15-17. He explained that ATT Advertising did most or all of the business negotiation and work with YPPI, developed the terms and purchase price, then worked with ATT Services to execute and put together the contract. *Id.* at 106:6-13

### 2.     Profits

Clenney explained that the prices for advertising appearing in YP-branded directories was determined by several factors, including the placement of the advertisement in the telephone directory, the size of the advertisement, the color of the advertisement, the geographical distribution of the directory, the type of customer purchasing the advertisement, and, in some circumstances, the number of leads an advertisement generated.  Doc. 121 ¶ 15.  The use of an image in an advertisement or website was not a factor that determined the price and inclusion of a stock image did not increase the price.  *Id.* ¶ 16.

Defendants removed or replaced imagery that YPPI alleges constitute copyright infringement in this case.  Doc. 120 ¶ 5.  Robert Shawn Beard was responsible for such removal. *Id.*  He and his team removed alleged YPPI images from more than 400 advertisements.  *Id.* ¶ 6. None of the customers who had an advertisement from which an alleged YPPI image was removed complained about the removal, cancelled their advertisement, demanded to pay less, or paid less for the advertisement after the alleged YPPI images were removed.  *Id.* ¶ 7.

YPPI retained Joseph J. Brown to provide an opinion as to whether revenue received from the sale of an advertisement that contained one or more of YPPI's copyrighted images would be reasonably related to the use of the YPPI copyrighted images.  Doc. 157-17.  Pursuant to this Court's Order on Defendants' *Daubert*[2] motion to exclude Brown's testimony (Doc. 191), which finds that Brown's testimony does not meet the requirements of Federal Rule of Evidence 702, the Court will not consider Brown's testimony in support of YPPI's claims for lost profits.

---

[2] *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993)

### C. Motion for Summary Judgment

Defendants moved for summary judgment on both counts of YPPI's Complaint. Doc. 157. They did not move for summary judgment on their counterclaims for declaratory judgment and attorneys' fees. In the Motion for Summary Judgment, Defendants argue that YPPI's copyright infringement claims fail as a matter of law because Defendants were licensed to use the YPPI images at issue under the Berry License and ATT License. *Id.* at 14-22. Defendants argue that the Berry License granted L.M. Berry Company's affiliates a perpetual license to use 5,000 of YPPI's images, including 256 of the 289 images that YPPI claims were infringed by Defendants, and that Defendants were affiliates of L.M. Berry Company. *Id.* at 14-15. Defendants also argue that the ATT License granted ATT Advertising and its affiliates a license to use 2,150 images, including 267 of the 289 images that YPPI claims were infringed by Defendants, and that Defendants were affiliates of ATT Advertising. *Id.* at 15-16. Defendants state that between the two licenses, they were authorized to use all images that YPPI claims were infringed. *Id.* at 17. Finally, Defendants argue that YPPI's claim for profits fail as a matter of law because YPPI could show no nexus between Defendants' profits and their use of YPPI's images. *Id.* at 22-26.

YPPI opposes the Motion for Summary Judgment. Doc. 135. In response, YPPI argues that the Berry License did not authorize use by all of L.M. Berry Company's affiliates, but only by affiliates "owned or owning" L.M. Berry Company. *Id.* at 3. Additionally, YPPI argues that Defendants could not use the Berry License because it did not provide sufficient seat licenses for Defendants' use, Defendants would not have needed the ATT License if they could use the Berry License, the ATT License contains a provision that superseded the Berry License, and Defendants' use of outsourcers made their use outside the scope of the Berry License. *Id.* at 7-8, 11-13. YPPI argues that the ATT License did not apply to Defendants because ATT Services, not ATT

Advertising, was a party to the ATT License, and Defendants were not affiliates or subsidiaries of ATT Services. *Id.* at 13-14. Additionally, YPPI argues that the ATT License expired before corporate restructuring, the ATT License could not be transferred, Defendants' use of outsourcers fell outside the scope of the license, and use of images without the required copyright language fell outside the scope of the ATT License. *Id.* at 14-18.

Additionally, YPPI opposes Defendants' argument regarding YPPI's claim for profits, arguing that they sufficiently showed a causal connection between Defendants' infringement and profits. *Id.* at 18-20. Finally, YPPI contends that the Motion for Summary Judgment should be denied based on discovery violations by Defendants detailed in YPPI's Motion for Discovery Sanctions Against Defendants. Doc. 124; Doc. 135 at 20-21.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id*. at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the

nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. Appx 852, 858 (11th Cir. 2006).

## III.    DISCUSSION

17 U.S.C. § 501(b) allows "[t]he legal or beneficial owner of an exclusive right under a copyright . . . to institute an action for any infringement of that particular right committed while he or she is the owner of [the copyright]." A plaintiff in a copyright action must establish two elements: (1) that he or she owned a valid copyright in the work alleged to be infringed upon; and (2) that the defendant copied protected elements from that work. *Peter Letterese & Assocs., Inc. v. World Inst. Of Scientology Enters.*, 533 F.3d 1287, 1300 (11th Cir. 2008). The existence of a license is an affirmative defense to copyright infringement. *Id.* at 1308. As an affirmative defense, the defendant has the burden of proving the existence of the license. *Fodere v. Lorenzo*, No. 09-cv-23120, 2011 WL 465468, at *4 (S.D. Fla. Feb. 4, 2011).

The parties here do not dispute that YPPI had valid copyrights in the images, or that Defendants used the images. The primary issue in this case is whether Defendants were beneficiaries of the Berry License and ATT License.

### A.    Motion for Judicial Notice

Plaintiff requests, pursuant to Federal Rule of Evidence 201, that the Court take judicial notice of AT&T Inc.'s Form 10-Q filed with the Securities and Exchange Commission because it is a document that can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned. Doc. 133. Defendants do not object to the request, but argue that it does not affect their Motion for Summary Judgment.

Because Plaintiff's motion is unopposed and documents publicly filed with the Securities and Exchange Commission are the type that the Court may judicially notice pursuant to Rule 201(b), *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-79 (11th Cir. 1999), the Court will grant Plaintiff's request to take judicial notice of AT&T Inc.'s form 10-Q.

**B.      Berry License**

**1.      Whether Defendants were Permitted to Use the Berry License**

The Berry License was "between L.M. Berry and Company, and all affiliates owned or owning the same . . . and Yellow Pages Photos, Inc. . . . ." Doc. 157-2 at 2. The parties dispute the meaning of the phrase "owned or owning." Doc. 135 at 3; Doc. 141 at 6. Although YPPI is not clear on what it asserts this phrase to mean, it implies in the Response that it does not include all affiliates of L.M. Berry and Company. Doc. 135 at 3. In their Reply, Defendants argue that although the phrase "is not a model of clarity," (Doc. 141 at 6), the meaning of the phrase is later clarified in the indemnity provision of the Berry License, which states that YPPI:

> [S]hall defend, indemnify, and hold [L.M. Berry and Company] and its parent, subsidiaries, *and commonly owned or controlled affiliates* and their respective officers, directors and employees harmless from all damages . . . , liabilities, and expenses . . . , arising out of or connected with any actual or threatened lawsuit, claim or legal proceeding alleging that the possession, distribution or use of the Digital Media by [L.M. Berry and Company] pursuant to and in accordance with this Agreement infringes on any [of the subsequently enumerated] intellectual property or personal rights of any third party . . . .

Doc. 157-2 at 3. Defendants contend that the language "commonly owned or controlled affiliates" in the indemnity provision clarifies the "owned or owning" because, according to Defendants, it would not make sense for YPPI to have indemnification obligations to L.M. Berry and Company affiliates that were not allowed to use the images under the L.M. Berry License. Doc. 141 at 6.

16

The Court disagrees with Defendants' reading of the Berry License. Notably, the indemnity provision does not state that YPPI was required to indemnify the listed classes of people and entities for those individuals' or entities' use of any images. Instead, the provision states that those classes of people and entities would be indemnified for use and distribution of the images by "Licensee," which was defined as "L.M. Berry and Company, and all affiliates owned or owning the same." Doc. 157-2 at 2-3. The indemnity provision could reasonably be read to require indemnification of commonly owned or controlled affiliates that were sued based on use or distribution by "Licensee" where such affiliates were not the users or distributors of the images. Indeed, a reader of the entire contract could argue that because the Berry License later includes the language "commonly owned or controlled affiliates" in the indemnification provision, but not in the definition of "Licensee," such entities were deliberately excluded from inclusion as entities permitted to use the license.

At best, the Berry License is clear that entities that owned or were owned by L.M. Berry and Company were included as Licensees, but is unclear as to whether affiliates who had common ownership with L.M. Berry and Company were included as Licensees. Under Ohio law, "it is presumed that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Brandon/Wiant Co. v. Teamor*, 708 N.E.2d 1024, 1028 (Ohio Ct. App. 1998). Accordingly, "[c]ourts will not construe contract language that is clear and unambiguous on its face," but will "give effect to the language of the contract." *Id.* However, " 'where the language of a contract is reasonably susceptible of more than one interpretation, the meaning of ambiguous language is a question of fact' to be determined by a jury." *Geczi v. Lifetime Fitness*, 973 N.E.2d 801, 805 (Ohio Ct. App. 2012). Because of this, the Court will examine whether Defendants are either owned by or own L.M. Berry and Company, which became YP Advertising & Publishing

LLC and are therefore clearly intended as Licensees, or whether they are simply affiliates with common ownership, which are not clearly included as Licensees and whose inclusion is subject to determination by a jury.

### a.    Defendant Yellow Pages

AT&T Inc. purchased the business unit of BellSouth that included L.M. Berry and Company in 2006, before the alleged copyright infringement occurred. Doc. 121 ¶ 8. Also, before the alleged infringement, L.M. Berry and Company became L.M. Berry and Company LLC, which became a wholly-owned subsidiary of YP Subsidiary Holdings LLC, which was a subsidiary of Defendant YP LLC. Doc. 157-10. Thus, before the alleged infringement, L.M. Berry and Company was owned by Defendant Yellow Pages, making Defendant Yellow Pages an affiliate[3] owning L.M. Berry and Company, and included within the scope of the Berry License.

YPPI asserts several arguments that Yellow Pages did not enjoy the benefits of a licensee under the Berry License, none of which create a genuine issue of material fact as to this matter. The first three arguments rely on the connection between L.M. Berry and Company and AT&T, which is the original connection that granted Yellow Pages access to the Berry License. First, YPPI argues that AT&T would not have had to expressly license, pursuant to the ATT License, images known by the parties as the "LM Berry/Nashville Collection" if it already enjoyed the benefits of the Berry License. Doc. 135 at 11 (citing Doc. 119-6). The Court disagrees. As noted by both parties, AT&T required more than the 45 seat licenses provided for in the Berry License.

---

[3] An "affiliate" is "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, Blacks Law Dictionary (11th ed. 2019). Similarly, under Texas law, which governs the ATT License, an "affiliate" is "a person who controls, is controlled by, or is under common control with another person." Tex. Bus. Organization Code, § 1.002(1).

Doc. 135 at 7; Doc. 141 at 4. Moreover, YPPI does not explain how acquisition of rights to the images under a second license would automatically render the first license invalid. As explained by Defendants, such facts simply show that the second license was unnecessary.

Second, YPPI argues that AT&T could not use the Berry License because it would need far more than 45 seat licenses. Doc. 135 at 12. This argument answers the issue raised by YPPI's first argument—Yellow Pages could use the Berry License, but would need additional resources.

Third, YPPI argues that even if Yellow Pages could use the Berry License, a provision in the ATT License superseded the Berry License. Specifically, the ATT License has an "entire agreement" provision that states as follows:

> The terms contained in this Agreement . . . will constitute the entire integrated agreement between Supplier and AT&T with respect to the subject matter hereof. This Agreement will supersede all prior oral and written discussions, agreements and understandings of the Parties with respect hereto.

Doc. 157-6 at 5. YPPI's argument is misplaced.

The clause is simply a merger clause. When a contract has a merger clause, it is "presume[d] that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence." *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., Inc.*, 234 S.W.3d 711, 719 (Tex. App. 2007). The merger clause simply relates to the "subject matter" of the ATT License, which is a different subject matter from the Berry License. Additionally, although L.M. Berry and Company may have been owned by AT&T Inc., and an affiliate of other subsidiaries, it was not a party to the ATT License. Accordingly, the merger clause in the ATT License did not supersede the Berry License.

Finally, YPPI argues that Yellow Pages lost its right to use YPPI's images by allowing outsourcers to use images in violation of the Berry License. Doc. 135 at 12. YPPI contends that

the use of outsourcers fell outside the scope of the license, whereas Defendants contend that if such a breach occurred—which they do not concede—it was merely a breach of a covenant, which would not give rise to a copyright infringement claim. *Compare Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-cv-60-T-30MAP, 2013 WL 3285278, at *7 (M.D. Fla. June 27, 2013) (stating that "copyright law is clear that a licensee's breach of a covenant in a copyright license does not rescind the authorization to sue the copyright work, but rather provides the licensor with a cause of action for breach of contract."); *with Virtual Studios, Inc. v. Royalty Carpet Mills, Inc.*, No. 4:12-CV-0077-HLM, 2014 WL 12495340, at *8 (N.D. Ga. Feb. 10, 2014) (explaining that when a licensee acts outside the scope of the license, the licensor may bring an action for copyright infringement); *see also Eberhard Architects, LLC v. Bogart Architecture, Inc.*, 314 F.R.D. 567, 572 (N.D. Ohio 2016) (stating that generally a licensor has a claim for breach of contract, not copyright infringement, where a licensee breaches a covenant).

"A covenant is a contractual promise, i.e., a manifestation of intention to act or refrain from acting in a particular way, such that the promisee is justified in understanding that the promisor has made a commitment." *MDY Indus., LLC v. Blizzard Entm't*, 629 F.3d 928, 939 (9th Cir. 2010). Contractual terms that limit a licensee's scope are known as "conditions." *Id.* State law applies in determining whether a matter is a condition or a covenant. *Id.*; *see also Eberhard Architects*, 314 F.R.D. at 572. "Ohio law disfavors conditions, and 'whenever possible courts will avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary.' " *Eberhard Architects*, 314, F.R.D. at 572 (quoting *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.*, 196 Ohio App. 3d 784, 965, N.E.2d 1007 (2011)).

Here, the portion of the Berry License purportedly violated is the provision that limits the use of the license to "no more than 48 employees" for purposes of "creating modified images or

templates." Doc. 157-2 at 2-3. Nothing in the contract plainly indicates that this was a condition and not a covenant. Accordingly, the proper remedy for any breach of the provision would be breach of contract, not copyright infringement.

Based on the above, the undisputed evidence demonstrates that Defendant Yellow Pages was entitled to use the Berry License. Accordingly, the Court will grant summary judgment in favor of Defendant YP, LLC with respect to the issue of whether it was permitted to use the Berry License. As a matter of law, Defendant YP, LLC's use of images covered by the Berry License did not constitute copyright infringement.

### b. Defendant Print Media

Defendants contend that Print Media was formed "under common ownership with L.M. Berry and AT&T Advertising," and that as of January 1, 2015 Defendants "were affiliates of YP Advertising & Publishing LLC," which L.M. Berry and Company (as originally named) had merged into, with "common ownership." *Id.* ¶¶ 11-12. Thus, although it is clear that Print Media was an affiliate of L.M. Berry and Company, and owned by the same entity, it is not clear that it qualified as an "affiliate[] owned or owning same" as required by the Berry License. Doc. 157-2 at 2. Accordingly, for purposes of summary judgment, Defendants have failed to establish the existence of a license for Print Media based on the Berry License. The Court, therefore, will deny Defendants' motion for summary judgment on YPPI's claim of copyright infringement against Print Media.

### 2. Whether the Images Fell Under the Berry License

According to Defendants, YPPI identified to Defendants advertisements that contained 289 unique image IDs in response to Defendants' interrogatory requesting YPPI identify each advertisement and/or website that it contended constituted an infringing use of a YPPI image. Doc.

122 ¶¶ 4-5. Defendants contend that 256 of the 289 YPPI images were covered by the Berry License. *Id.* ¶ 6.

In response to the Motion for Summary Judgment, YPPI submitted a declaration by Moore, who states that he identified over 330 different YPPI copyrighted images used by Defendants. Doc. 135-1 ¶ 4. Moore asserts that in addition to those more than 330 images, he identified 365 YPPI images in Defendants' document production. *Id.* ¶ 6. The declaration does not address whether these images, or some portion of these images, fall under the Berry License or the ATT License.

In their Reply, Defendants provided a declaration, of Kuangyan Huang, stating that Moore has not identified to Defendants any images other than those 289 referenced in the Motion for Summary Judgment. Doc. 142 ¶ 7. Additionally, the Huang declaration further provides that each of the images identified by YPPI are covered by either the Berry License or the ATT License.

Determining whether Yellow Pages used images not covered by the Berry License would require the Court to weigh the credibility between the conflicting affidavits, which the Court cannot do on summary judgment. Accordingly, the Court cannot grant summary judgment in whole on YPPI's copyright infringement claim against Yellow Pages.

Nonetheless, this is a matter that may not genuinely be in dispute. YPPI is, therefore, directed to respond within fourteen (14) days of the date of this Order and advise the Court as to whether some or all of the images used by Defendants were covered by the Berry License. YPPI's response should be supported by any appropriate evidence. Defendants may file a response within fourteen (14) days of the date of YPPI's submission.

C.    ATT License

    1.    Whether Defendants were Permitted to Use the ATT License

"For a court to be able to construe a contract as a matter of law, the contract must be unambiguous." *Dynamic Pub. & Distrib. L.L.C. v. Unitec Indus. Ctr. Prop. Owners Ass'n, Inc.*, 167 S.W.3d 341, 345 (Tex. App. 2005). "Whether an instrument is ambiguous is a question of law that must be decided by reviewing the covenant as a whole in light of the circumstances present when the covenant was entered." *Id.* "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent." *Id.* Ordinarily, summary judgment is not proper where the contract is ambiguous because "interpretation of ambiguous contracts is a question for the jury." *Id.* However, "[t]he court may construe as a matter of law an ambiguous contract by considering undisputed evidence of the parties' intent. If there is a conflict in the parol evidence, however, the question of the parties' intent becomes one of fact, appropriate for consideration by the jury." *Corley v. Entergy Corp.*, 246 F. Supp. 2d 565, 574 (E.D. Tex. 2003) (citing *Trinity Universal Ins. Co. v. Ponsford Bros.*, 423 S.W.2d 571, 575 (Tex. 1968)).

The cover page to the ATT License states that it is an agreement "Between Yellow Pages Photo, Inc. And AT&T Services, Inc." Doc. 157-6 at 2. On the first page of the ATT License, it lists "AT&T Advertising, L.P. d/b/a/ AT&T Advertising and Publishing" as the entity to whom invoices should be sent, and states the "AT&T: Affiliate Name" as ATT Services. *Id.* at 3. Additionally, questions were to be addressed to Davis at ATT Services. *Id.* The Agreement does not have a defined "Licensee." On the signature line, the signatory is typed into the agreement as "AT&T Affiliate Name: AT&T Services, Inc. On behalf of AT&T Advertising, L.P. dba AT&T Advertising and Publishing." *Id.* at 4.

The cover page for the first and second amendments to the ATT License states that they are amendments "Between Yellow Pages Photo, Inc. And AT&T Services, Inc." *Id.* at 10, 14. The first page of the amendments states that they are between YPPI and ATT Services. *Id.* at 11, 15. ATT Services signed the first amendment and is listed as the signatory for the second amendment. *Id.* at 13, 16.

Based on the above, the ATT License could reasonably be interpreted as being between either ATT Advertising and YPPI, or ATT Services and YPPI. Although Defendants contend that ATT Services was clearly an agent to a disclosed principal, the cover page and amendments suggest that ATT Services may have been the intended party. Defendants are simply cherry-picking the signature line that is convenient for their purposes while ignoring the remainder of the license. Nor is Defendants argument persuasive that because ATT Advertising is the first AT&T entity used in the ATT License, it must be the entity intended any time the license uses the name "AT&T". Defendants cite to no law to support this proposition. The term AT&T is not a word used earlier in a contract that should be given the same meaning in a subsequent portion of the contract because the license specifically spells out ATT Advertising's name and does not refer to it as AT&T. Doc. 157-6 at 3. Moreover, the cover page first lists ATT Services, making ATT Advertising the second use of "AT&T". *Id.* at 2. Finally, no evidence supports Defendants' proposition that ATT Services is an agent that is also a party to the contract, because no evidence shows that ATT Services and YPPI agreed to such an arrangement.

Defendants argue that, in the event the Court finds the ATT License to be ambiguous, the Court should interpret the contract as being between YPPI and ATT Advertising because the ATT License was clearly intended to be with ATT Advertising. In support of this, Defendants cite to testimony and evidence that (1) ATT Services was simply a contract procurement entity that

provided administrative services to other AT&T subsidiaries; (2) ATT Advertising was the subsidiary responsible for producing, publishing, and creating advertisements; (3) Moore had no understanding of the difference between ATT Services and ATT Advertising, but communicated with ATT Advertising; (4) proposals sent from YPPI/Moore to ATT Advertising listed ATT Advertising as the party to the license; and (5) ATT Advertising negotiated the pricing and paid the invoices.  Doc. 157 ¶¶ 14-19, pg. 21.

YPPI did not address the extrinsic evidence in its Response, but relies on the language of the ATT License and amendments to argue that ATT was the party to the license.  As the Court explained, the ATT License is ambiguous as to whether ATT Services or ATT Advertising was the intended party.  Thus, the Court examines whether undisputed extrinsic evidence resolves this ambiguity.

Moore's testimony regarding the intended party to the ATT License is not entirely consistent.  Moore testified that he believed ATT Advertising would use the library of images to create advertisements.  He also testified that he believed ATT Services was responsible for publishing AT&T's yellow pages directories.  Doc. 157-5 at 72:5-14; 94:5-12.  However, Moore also testified that he did not know, from a legal perspective, which AT&T entity was going to maintain the merged library and could not distinguish between the different AT&T entities.

Other evidence supports the conclusion that Moore—and therefore YPPI—did know that ATT Advertising was the entity intended to use the license.  YPPI provided ATT Advertising with a proposal for using YPPI's stock photographs.  The proposal specifically states that the options offered "AT&T Advertising & Publishing the ability to: 1.  Achieve significant image library value across the new merged enterprise[;] 2.  Enhance the libraries dynamic growth[; and] 3.  Realize substantial savings while positioning itself for greater revenue opportunities."  Doc. 157-9 at 6.

YPPI also provided an addendum to the proposal, to ATT Advertising, with proposed pricing. *Id.* at 9, 13. The addendum states that YPPI "appreciates the opportunity to serve AT&T Advertising & Publishing and looks forward to a long lasting business relationship." *Id.* at 10. Moore drafted the proposals. Doc. 157-5 at 101:8-9.

Based on the undisputed evidence, the most favorable interpretation for YPPI that can reasonably be made is that YPPI was indifferent to which AT&T entity was the party to the license, but intended for ATT Advertising to use the license. None of the extrinsic evidence is conflicting. All of the evidence is consistent with ATT Advertising being the party to the ATT License, and no extrinsic evidence supports the conclusion that ATT Servicing was the intended party to the ATT License. Therefore, based on the undisputed evidence, the Court concludes that ATT Advertising is the party to the ATT License.

The Court will next examine whether Defendants could use the ATT License with ATT Advertising as the licensee. In the "description" portion of the ATT License, it states that the seat license applies to AT&T and its subsidiaries. Doc. 157-6 at 3. In the "specifications" portion of the license, it states that the "Licensor License Grant" is "to AT&T and its affiliates." *Id.* Because the language in the description stating AT&T and its subsidiaries differs from the language in the specifications stating AT&T and its affiliates, YPPI contends that the ATT License is unclear as to who enjoys rights under the license—AT&T subsidiaries, AT&T affiliates, or both. Doc. 135 at 4. The Court disagrees. The ATT License plainly states when specifying who is covered under the license that it applies to AT&T and its affiliates, which would include subsidiaries. *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W. 461, 466 (Tex. App. 2013) (stating that more specific contractual provisions govern over general provisions). Thus, for summary judgment

purposes and based on the ambiguity in the ATT License, Defendants fall within the scope of the ATT License if they are affiliates of ATT Services and ATT Advertising.

Both Defendants were affiliates to ATT Advertising. Defendants were under common ownership with ATT Advertising. Doc. 121 ¶¶ 10-12; *see also Vision Capital Real Estate, LLC v. Wurzak Hotel Grp.*, No. 05-15-00917-CV, 2016 WL 6093977, at *4 (Tex. App. Oct. 19, 2016) (" 'Affiliate' is generally defined as a . . . 'company effectively controlled by another or associated with others under common ownership or control.' "). Accordingly, they were affiliates of ATT Advertising and enjoyed rights under the ATT License to use images covered by the ATT License.

### 2. Whether the Images Used Were Covered by the ATT License

As explained above, Defendants submitted a declaration stating that the ATT License covers 267 of 289 images identified by YPPI as purportedly infringing on its copyrights. Doc. 122 ¶ 6. The Berry License covers the remaining 22 images. *Id.* YPPI responded by filing a declaration by Moore stating that 365 YPPI images were used. Doc. 135-1 ¶ 6. The declaration does not address whether these images, or some portion of these images, fall under the Berry License or the ATT License. Defendants replied that YPPI identified only 289 images to them. Doc. 142 ¶ 7.

Although the Court cannot determine as a matter of law based on these affidavits whether Defendants used only images covered by the ATT License, the Berry License, or both, this is a matter that may not genuinely be in dispute. As previously directed, YPPI shall file a response within fourteen (14) days of the date of this Order advising the Court whether some or all of the images used by Defendants were covered by the Berry License. YPPI shall also address whether some or all of the images used by Defendants were covered by the ATT License. Defendants may file a response within fourteen (14) days of the date of YPPI's submission.

### 3.     Expiration or Transfer of the License

YPPI argues that, even if Defendants could use the ATT License, the ATT License contains an expiration date of December 31, 2010, resulting in a genuine issue of material fact as to whether the license expired prior to any corporate restructuring.  Doc. 135 at 15.  YPPI further argues that the expiration occurred before AT&T Inc. sold its advertising businesses, and that the license did not survive the sale because no document shows an assignment or transfer of the ATT License. *Id.*

Defendants contend that this argument is a red herring because the license states that it is "perpetual." *Id.* at 3, 7.  Additionally, the ATT License states that "[o]bligations and rights under this Agreement . . . which by their nature would reasonably continue beyond the Termination, Cancellation or expiration of this Agreement (including in those Sections entitled . . . "Specifications" [where the perpetual provision is found] . . . ) will survive the Termination, Cancellation or expiration of this Agreement . . . ." *Id.* at 4.

The ATT License does, in fact, provide an expiration date of December 31, 2010.  Doc. 157-6 at 3.  However, the ATT License indicates that the license is perpetual, which is indisputably an obligation or right that would, by its nature, continue beyond the expiration of the ATT License. By reading the expiration date in conjunction with the remainder of the contract, which the Court must do, there is no dispute of material fact regarding the perpetuity of the ATT License. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W. 3d 342, 345 (Tex. 2006).

YPPI's argument regarding the 2012 "spin-off," in which AT&T Inc. placed its yellow pages business unit into a newly formed holding company named YP Holdings LLC, in which AT&T Inc. held a 47% equity interest, is also misplaced.  Doc. 135 at 15; Doc. 135-4 at 5.  YPPI contends that neither Defendant or their related entities are "affiliates" of ATT Services or AT&T

Inc. under Texas law. YPPI is correct that no evidence demonstrates that ATT Services or AT&T Inc. are affiliates of Defendants, but that is irrelevant. The undisputed evidence shows that ATT Advertising is the intended party to the ATT License, and Defendants are affiliates to ATT Advertising.

ATT Advertising became YP Advertising L.P. through a name change, which later merged with YP Southeast Advertising & Publishing LLC. Docs. 157-12, 157-13. YP Southeast Advertising, formerly ATT Advertising, was owned by Defendant Yellow Pages. Doc. 157-10. Both Defendants shared common ownership with ATT Advertising. Thus, the ATT License would not need to be transferred or assumed, because the entities remained affiliates in the yellow pages business unit.

### 4.  Breach of Covenants

YPPI further argues that Defendants' use of outsourcers fell outside the scope of the ATT License, which restricted use of YPPI images to "AT&T's business locations." Doc. 135 at 17. YPPI also argues that Defendants' failure to use the required copyright notice delineated by the ATT License demonstrates that Defendants do not have rights under the license. Doc. 135 at 17-18. As previously explained, where a licensee acts outside the scope of a license by violating a condition to the license, the licensor may claim copyright infringement. *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483-84 (5th Cir. 1981). Texas law disfavors conditions, and courts should construe contract language as covenants rather than conditions, where possible. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636 (Tex. 2008).

YPPI has not shown that the provisions cited by it—that images should be used in AT&T business locations only and that images were required to contain a copyright notice—are a condition and not a covenant. No clear language in the ATT License establishes that these

provisions are a condition, as is required for a provision to be a condition under Texas law. *W.F. White Land Co. v. Christenson*, 14 S.W.2d 369, 371 (Tex. App. 1928). Thus, the only reasonable interpretation is that the provision is a covenant, not a condition, which YPPI cannot claim as the basis for copyright infringement. Instead, any use of outsourcers by Defendants would give rise only to a claim for breach of contract. Accordingly, arguments that Defendants used outsourcers or failed to include the requisite copyright notice do not support a claim for copyright infringement.

Based on the above, the Court will grant summary judgment on the issue of whether Defendants were permitted to use the licensed images under the ATT License, and their use of such images did not constitute copyright infringement.

### D.      Claim for Profits

In a claim for copyright infringement:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). In a claim for profits, "the plaintiff must show a causal relationship between the infringement and profits . . . ." *Pronman v. Styles*, 676 F. App'x 846, 848 (11th Cir. 2017). The initial burden placed on the copyright holder to show some causal connection is low. *Latimer v. Roaring Toys, Inc.*, No. 8:06-cv-1921-T-30AEP, 2010 WL 3747148, at *5 (M.D. Fla. Sept. 21, 2010). However, "a plaintiff may not seek gross revenues based entirely on a speculative connection to the plaintiff's claim." *Id.* (quoting *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1280 (M.D. Fla. 2008)).

Here, Defendants move for summary judgment on YPPI's claim for profits and argue that YPPI cannot show a causal relationship between their profits and any alleged infringement. Doc. 157 at 22-26. YPPI argues that "the causal relationship between the use of YPPI's images in Defendants' ads and the revenue Defendants received from the sale of those ads is evident by simply observing the Defendants' ads containing YPPI images." Doc. 135 at 19. Additionally, YPPI relies on Defendants' training materials which state that a picture is worth a thousand words. *Id.* at 19-20. Although YPPI also relies on the opinion of an expert, Joseph J. Brown, the Court found that the expert did not meet the Rule 702 and *Daubert* requirements for providing expert testimony. Thus, the Court has not considered Brown's opinion in opposition to Defendants' motion.

Defendants provide unrebutted evidence that their profits are not affected by use of YPPI's images. Specifically, their pricing structure is not reliant on it, and their profits were not affected by discontinuing use of YPPI's images. Doc. 120 ¶ 7; Doc. 121 ¶¶ 15-16.

With respect to evidence that Defendants find images to be vital to advertisements, such evidence does not show a connection specifically between use of YPPI's images and profits from advertisements. Defendants could—and did—use non-YPPI images with no effect on their profits. Doc. 120 ¶ 7.

Based on the above, YPPI has failed to meet its burden to show a causal relationship between Defendants' use of YPPI images and their profits. Accordingly, the Court will grant summary judgment in favor of Defendants with respect to YPPI's claim for profits. YPPI may pursue its claim for actual damages.

E.      **Defendants' Discovery Deficiencies**

YPPI's final argument in opposition to summary judgment is that Defendants violated this Court's discovery orders by not producing information critical to YPPI's claims and damages, or Defendants' license defense.  Doc. 135 at 20-21.  YPPI relies on the arguments made in YPPI's Motion for Discovery Sanctions against Defendants (Doc. 124), in which YPPI requested the Court sanction Defendants, including by precluding them from raising the licenses as a defense in this case (*id.* at 17).  The Court denied the motion and need not re-address its reasons for doing so here.[4]  Accordingly, it is

**ORDERED**:

1.      Plaintiff's Notice to Take Judicial Notice (Doc. 133) is **GRANTED.**

2.      Defendants YP LLC and Print Media LLC's Motion for Summary Judgment (Doc. 119) is **GRANTED-in-part** and **DENIED-in-part.**

3.      The Court grants summary judgment in favor of Defendant YP, LLC with respect to the issue of whether it was permitted to use the licenses referred to herein as the Berry License and the ATT License.  As a matter of law, any use of Plaintiff's copyrighted images covered by these licenses did not constitute copyright infringement.

4.      The Court grants summary judgment in favor of Defendant Print Media LLC with respect to the issue of whether it was permitted to use the license referred to herein as the ATT License.  As a matter of law, any use of Plaintiff's copyrighted images covered by this license did not constitute copyright infringement.  The Court denies summary judgment with respect to the

---

[4] Additionally, at the Final Pretrial Conference, YPPI acknowledged that all discovery issues have been resolved.

issue of whether Defendant Print Media LLC was permitted to use the license referred to herein as the Berry License.

5.    The Court grants summary judgment in favor of Defendants on the issue of whether Plaintiff may claim Defendants' profits as damages.  Plaintiff may not claim Defendants' profits as damages.

6.    The Court denies summary judgment as to Counts I and II of the Amended Complaint because the evidence is disputed as to whether the images used by Defendants were covered by the licenses.

7.    Within **FOURTEEN (14) DAYS** of the date of this Order, YPPI shall advise the Court as to whether some or all of the images used by Defendants were covered by the Berry License, the ATT License, or both.  YPPI's response should be supported by any appropriate evidence.  Defendants may file a response within **FOURTEEN (14) DAYS** of the date of YPPI's response.

8.    As discussed at the Final Pretrial Conference, in light of the Court's ruling on the motion for summary judgment, on or before December 20, 2019, the parties may file an Amended Pretrial Statement.

**DONE AND ORDERED** in Tampa, Florida on November 27, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any