UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YELLOWPAGES PHOTOS, INC.,

      Plaintiff,

v.                                                                    Case No: 8:17-cv-764-T-36JSS

YP, LLC and PRINT MEDIA LLC,

      Defendants.

_____/

## **O R D E R**

This matter comes before the Court upon Defendant Print Media LLC's Supplemental Motion for Summary Judgment (Doc. 220), Plaintiff's response thereto (Doc. 228), and Defendant's reply (Doc. 231).  In the motion, Defendant argues that only ten of Plaintiff's copyrighted images remain in dispute following the Court's Order on Defendants YP LLC and Print Media LLC's Motion for Summary Judgment (Doc. 196).  Doc. 220 at 2.  Defendant contends that these images were encompassed by the License Agreement between L.M. Berry and Company and Plaintiff ("Berry License"), which authorizes use of an image in renewal, republication, and reprint of an advertisement.  *Id.* at 2-3.  Defendant further argues that all disputed advertisements containing Plaintiff's copyrighted images were renewals, republications, or reprints of authorized advertisements and that, because of this, it is entitled to summary judgment on Plaintiff's copyright infringement claim.  *Id.* at 3.  Plaintiff responds that a disputed issue of material fact exists as to whether the images were originally used in advertisements under the Berry License, and whether alterations to the advertisements prevent Defendant's use from qualifying as renewals, republications, or reprints.  Doc. 228.  The Court, having considered the motion and being fully advised in the premises, will grant Defendant's Supplemental Motion for Summary Judgment.

I.   **FACTS**[1]

    A.   **Background**

This is the second time that this case is before the Court on a Motion for Summary Judgment.  The facts of this case are set forth in detail in the Court's prior Order and will not be repeated at length here.  Doc. 196.  This Order is limited to the pertinent facts required for resolution of this Supplemental Motion for Summary Judgment.  The only remaining issue is Plaintiff Yellow Pages Photos, Inc.'s ("YPPI") claim that Defendant Print Media LLC ("Print Media") infringed on ten of YPPI's copyrighted stock images.  Doc. 211 at 2.

    B.   **Undisputed Facts**

        1.   **The Berry License**

YPPI, which is owned and operated by William Trent Moore, owns the copyrights to various images.  Doc. 143 ¶¶ 1, 3.  YPPI is in the business of licensing images to publishers of yellow pages directories.  *Id.* ¶ 3.  In conducting its business, in June 2006, YPPI entered into The Berry License with L.M. Berry and Company ("Berry").  Doc. 157-2.  The Berry License states that "Licensor [YPPI], in consideration of the one-time payment by Berry of $32,435.00, grants Berry a one-year license, from the date this Agreement was duly executed, for the use of Licensor products and services pursuant to the terms and conditions set forth herein."  *Id.* at 2.

The Berry License provides that the "[l]icensee," which is defined as Berry "and all affiliates owned or owning same,"

> Has the non-exclusive right to copy, crop, manipulate, modify, alter, reproduce, create derivative works of, transmit, and display the Digital Media an unlimited number of times in any and all media for any purpose, including, but not limited to
>
> -    Yellow-pages directories (including print and electronic directories);

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations, and exhibits.  Docs. 220-222, 228-231.

- Advertising and promotional materials;
- Online- or electronic-distribution systems, including web-page design;
- Broadcast and theatrical exhibitions; and
- Publications and products.

*Id.* at 2.  These "rights to the Digital Media and to use the Digital media as specified in th[e] Agreement are worldwide and perpetual."  *Id.*

The Berry License contains a provision that governs termination and revocation of the agreement.  Doc. 157-2 at 4.  The agreement states, in pertinent part, that:

> Nothing in this Agreement shall be construed to affect that Digital Media used in end-client's applications (such as directory advertisements) prior to the termination of this Agreement; by way of example, should Digital Media be used in an end-client's directory advertisement prior to the termination of this Agreement, the Digital Media used in the original advertisement may continue to be used in renewals, republications or reprints of the advertisement.

*Id.*  This is the provision pursuant to which Print Media contends it could print the disputed images. Doc. 220 at 4, 6, 8-9.

### 2.   Print Media's Predecessors

The Berry License was entered into in 2006 between YPPI and Berry.  In 2008, The Berry Company LLC ("Berry Company") acquired assets of Berry and the Berry License was included in the transaction.  Doc. 220-2 at 2.  Berry Company contacted YPPI to obtain its consent to the Berry License "being transferred and assigned to" Berry Company.  *Id.*  YPPI, through Moore, granted consent to the transfer and assignment.  *Id.*

Berry Company was owned, through various subsidiaries and transactions, by YP, LLC ("YP"), which was authorized to use YPPI's images pursuant to the Berry License.  Doc. 196 at 18-21.  Between late 2014 and June 2015, YP published "The Real Yellow Pages."  Doc. 222 ¶ 7. Print Media took the publishing functions of "The Real Yellow Pages" over from YP in June 2015. *Id.* ¶ 8.

3

### 3.     The Images

The parties' dispute concerns ten images.  The first image is a dinner plate with barbeque foods on it, titled "BBQ-A0120 Food 4."  Doc. 228-1 at 4.  This image will be referred to as the "BBQ Image".

The second image is of a gold or tan vehicle resembling a sedan and is titled "CRA-A0110 CRASH."  Doc. 228-3 at 5.  This image will be referred to as the "Gold Vehicle Crash Image."

The third image is of a black vehicle resembling a sports utility vehicle and is titled "CRA-A0117 CRASH."  Doc. 228-5 at 5.  This image will be referred to as the "Black Vehicle Crash Image."

The fourth, fifth, and sixth images all appear in the same advertisement.  The fourth image is of a gutter and is titled "GUT-A0116 GUTTERS."  Doc. 220-4 at 38.  This image will be referred to as the "Gutter Image."  The fifth image is of siding for a house and is titled "SID-A0112 SIDING."  *Id.*  This image will be referred to as the "Siding Image."  The sixth image is also of siding, is titled "SID-A0102 SIDING," and will be referred to as the "Second Siding Image."  *Id.*  Collectively, these will be referred to as the "Gutter and Siding Images."

The seventh image is of a home and is titled "HOM-C0146 HOMES 3."  Doc. 220-5 at 4.  This image will be referred to as the "Home Image."

The eighth image is of a larger home and is titled "HOM-D0120 HOMES 4."  Doc. 220-6 at 5.  This image will be referred to as the "Second Home Image."

The ninth image is of a screen enclosure outside of a home and is titled "SCE-A0141 SCREEN ENCLOSURES."  *Id.* at 34.  This image will be referred to as the "Screen Image."

The tenth image is of a tree stump and is titled "TRE-A0180E TREE SERVICE."  *Id.* at 45.  This image will be referred to as the "Tree Image."

4

### C.      Disputed Facts

With the exception of the Screen Image, YPPI disputes that the above-referenced images were published in advertisements by YP before Print Media took over the publishing functions of "The Real Yellow Pages" from YP in June 2015.  Doc. 228 at 6-9, 11, 13, 16, 18.  With respect to the BBQ Image, YPPI points to the cover of the directory containing the purported YP advertisement, which states "February 2015-2016."  Doc. 220-4 at 3.  Because this timeframe is inclusive of dates for which Print Media was the publisher, YPPI claims there is a genuine dispute of material fact as to whether the advertisement containing the BBQ Image was actually published by YP.  Doc. 228 at 6-7.

Other images similarly have cover pages that include dates after June 2015.  The purported YP covers for the Gold Vehicle Crash Image and Black Vehicle Crash Image reflect dates of June 2014-2015 (doc. 228-3 at 3; doc. 228-5 at 3); the cover for the Gutter and Siding Images reflects dates of February 2015-2016 (doc. 228-7 at 3); the cover for the Tree Image reflects dates of September 2014-2015 (doc. 228-14 at 3).   For the Home Image, Print Media provided eight directories purported to have been issued by YP, the covers of which reflect dates of April 2015-2016, September 2014-2015, August 2014-2015, and January 2015-2016.[2]  Doc. 228-9 at 3, 6, 8, 11, 14, 17, 20, 23.  Likewise, the Second Home Image appeared in seven directories purported to be issued by YP, and those directories reflect the dates of September 2014-2015, June 2014-2015, and December 2014-2015.[3]  Doc. 228-11 at 3, 6, 9, 12, 15, 18.  Because of this, YPPI contends a genuine issue of material fact exists as to whether YP issued the advertisements.

---

[2] Two of the directories reflect the date of April 2015-2016 and three reflect the date January 2015-2016.

[3] Five of the directories reflect the date of December 2014-2015.

In reply to this argument, Print Media submitted the declaration of Shawn Beard, who has worked in ad production for both print and online products for the YP-branded family of companies that includes YP and Print Media for more than twenty years.  Doc. 230.  Because of his experience, he is familiar with the creation and publication process of "The Real Yellow Pages" directories by YP and Print Media.  *Id.* ¶ 4.  Beard explains in his declaration that these "directories are typically distributed on an annual basis," and "[t]he date range listed on the front of [the] directories reflects the time period covered by the particular edition of the directory."  *Id.* ¶ 5.  Additionally, "[t]he directories are completed roughly a month before the time period starts to allow time for printing" and "[t]he printed directories are then published and distributed at the beginning of the time period reflected on the cover page."  *Id.*

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]"  Fed. R. Civ. P. 56(c)(2).  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  *Id.*  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548.

## III.    DISCUSSION[4]

### A.    Waiver

YPPI contends that Print Media's argument that it was entitled to print the copyrighted images as renewals, reprints, or republications is an affirmative defense that Print Media waived by failing to raise it in its Answer or Counterclaims.  Doc. 228 at 2.  YPPI argues that "Print Media could have (and should have) asserted as at least a partial defense its new argument that ads containing YPPI copyrighted images that were previously published by YP are covered by the scope of the Berry License," and that Print Media "did not do so."  *Id.* at 4.

Federal Rule of Civil Procedure 8(c) requires that "in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . license . . . ."  "The purpose of requiring that an affirmative defense be pled in the answer . . . is to provide notice to the opposing party of the existence of certain issues."  *Bergquist v. Fid. Info. Services, Inc.*, 197 Fed. Appx. 813, 814 (11th Cir. 2006) (internal quotation omitted).  As a result of Rule 8(c), affirmative defenses that are not pled are typically considered to be waived, unless the omission does not prejudice the plaintiff.  *Edwards v. Fulton Cty., Ga.*, 509 Fed. Appx. 882, 887 (11th Cir. 2013) ("It is true that a defendant intending to assert an affirmative defense must raise it in a responsive pleading, and failure to do so typically results in a waiver of the defense.").

---

[4] In its Supplemental Motion for Summary Judgment, Print Media anticipated various arguments that it expected YPPI to present based on statements made during the Final Pretrial Conference. Doc. 220 at 9-13.  These arguments do not appear in YPPI's response.  *See generally* doc. 228. Accordingly, they will not be addressed by the Court.

In its Answer, Print Media denied YPPI's claims that it committed copyright infringement, stating that it admitted to using images in advertisements, but averring "that all such uses of YPPI's images were permitted under one or more license agreements with YPPI, or its affiliates, predecessors, or principal." Doc. 51 ¶¶ 24-26, 38. Additionally, Print Media raised as a defense that "YPPI granted express licenses that permit [Print Media] to copy, transmit, and use the YPPI images in question in the manner alleged in the Amended Complaint." *Id.* at 7. The Answer clearly reflects that Print Media claimed that it was authorized to print the images pursuant to a license agreement.

To the extent that the Answer did not specifically identify the Berry License, YPPI has not been prejudiced. The Berry License was extensively discussed in the prior Motion for Summary Judgment, response, reply, and Order with no argument by YPPI that it had no notice that Print Media was claiming it was authorized to use the images under the Berry License. YPPI has not identified any law indicating that an affirmative defense must detail every argument or aspect of a defense. Accordingly, the Court rejects YPPI's claim that Print Media waived its argument that it was entitled to use the disputed images as reprints, republications, or renewals pursuant to the Berry License.

### B.      Renewals, Reprints, and Republications[5]

YPPI makes two arguments against Print Media's assertion that the advertisements containing YPPI images were authorized renewals, reprints, or republications:   (1) the advertisements were not published by YP prior to being published by Print Media; and (2) many

---

[5] The Berry License states that it "shall be governed in all respects by the laws of the State of Ohio, U.S.A., without reference to its laws relating to conflicts of law". Doc. 157-2 at 4.

of the advertisements contain differences from the prior publications that prevent them from qualifying as renewals, reprints, or republications. These arguments will be addressed in turn.

### 1.      Publication by YP

YPPI's argument that YP did not publish the directories containing the advertisements prior to Print Media taking over the publication of directories is without merit. YP published the directories prior to June 2015. Doc. 222 ¶ 8. Each of the directories had covers reflecting a beginning date prior to June 2015. Doc. 220-4 at 3; Docs. 228-3 at 3; 228-5 at 3; 228-7 at 3; 228-14 at 3; 228-9 at 3, 6, 8, 11, 14, 17, 20, 23; 228-11 at 3, 6, 9, 12, 15, 18. Beard explained that the directories would be completed approximately a month before the date reflected on the covers. Doc. 230 ¶ 5. Accordingly, YP published advertisements containing the disputed images prior to Print Media publishing the images. Because YP was authorized to use these images under the Berry License, the images could continue to be used "in renewals, republications or reprints of the [original] advertisement." Doc. 157-2 at 4.

### 2.      Changes to the Advertisements

As an initial matter, no dispute exists with respect to the Second Home Image and Tree Image.[6] YPPI presents no argument that the advertisements published by YP are in any way different from the advertisements published by Print Media for these two images. Doc. 228 at 16, 18. Accordingly, Print Media is entitled to summary judgment on YPPI's copyright infringement claim against it as to these images.

Minor differences exist between YP's publication and Print Media's publication of the remaining images. Print Media published the images in advertisements for the same companies

---

[6] As previously discussed, YPPI contested whether the images were published by YP in the first instance, but the Court's resolution of this issue leaves no further dispute between the parties with respect to the Second Home Image and the Tree Image. Doc. 228 at 16, 18.

and in advertisements that are substantially the same as those published by YP, but with differences such as formatting, size, updated company information, or minor text changes.  For example, for the BBQ Image, YP published an advertisement for "Gibson's Bar-B-Q."  Doc. 220-4 at 4.  The advertisement contains a web address, two telephone numbers, and two location addresses, and includes various statements about the restaurant, such as "Old Fashioned Breakfast Daily," "Huntsville Tradition Since 1956!," "Catering Available for Corporate Meetings & Picnics," "Catering For Up To 5,000," "Specializing in: • Barbecue Pork • Beef • Chicken • Ribs • Delicious Catfish • Barbecue Potatoes & Salads," and "See Our Menu In The Menu Section."  *Id.*  The advertisement is in a rectangular landscape format.  *Id.*

In Print Media's publication of the Gibson's Bar-B-Q Advertisement, in lieu of the "See Our Menu In the Menu Section" text, the advertisement contains an image resembling the shape of a shield, filled in black, with a fork and knife on the left and right sides of the image, respectively, and stating in white print "SEE OUR RESTAURANT," at the top, with a white banner crossing the middle/lower region stating in bold black print "MENU."[7]  *Id.* at 9.  The location of this image is slightly lower in the advertisement than the location of the statement "See Our Menu In the Menu Section."  *Id.*  Otherwise, the advertisement is the same:  it contains the same statements, the same web address, the same telephone numbers, and the same addresses.  *Id.* at 4, 9.

Also in one of its advertisements, Print Media's version contains the shield image and the formatting of the publication is changed to fit a larger, more square space.  *Id.* at 14.  Nonetheless,

---

[7] It is not entirely clear whether this advertisement was published by YP or Print Media.  This analysis assumes that the altered version was printed by Print Media so as to construe the facts in the light most favorable to the non-moving party.  Whether YP printed a copy of the advertisement using the shield image, or printed only "See Our Menu In The Menu Section" does not alter the analysis or conclusion.

all of the information is the same, the fonts used are the same, and the BBQ Image is the same. *Id.* The sole change is formatting for the advertisement to fit the provided space. Likewise, another more square advertisement of Gibson's Bar-B-Q was published by Print Media containing the statement "See Our Menu In The Menu Section," instead of the shield image. *Id.* at 15.

The other images in dispute contain similarly minor changes. With respect to the Gold Vehicle Crash Image, it is an attorney advertisement in which the YP publication stated "CELEBRATING 20 YEARS!" *Id.* at 19. The Print Media publications contain a different number of years of celebration, such as "CELBRATING 24 YEARS!" *Id.* at 22. The use of the Gold Vehicle Crash Image is the same and the other information on the advertisements is the same.

The advertisements containing the Black Vehicle Crash Image are for "PERSONAL INJURY" and "CRIMINAL DEFENSE" by the law firm "REZA SEDGHI ATTORNEY AT LAW." Doc. 228-5 at 3-4. The advertisement published by YP is a two-page advertisement that lists "Recent Recoveries" and types of injuries the firm handles, as well as other information about the attorneys and firm on the first page. *Id.* at 3. The first page contains a photo of the firm's attorneys, stating that one attorney was a judge for the Macon Municipal Court. *Id.* The second page pertains to criminal defense and lists the types of charges the firm handles and in which jurisdictions the attorneys are licensed to practice. *Id.* at 4. The second page also contains the law firm's web address and states the firm provides "SAME DAY FREE CONSULTATION." *Id.* The telephone number is listed on both the first and second pages. *Id.* at 3-4.

The advertisement published by Print Media is substantially similar to that published by YP. Doc. 228-6 at 4-5. The color scheme is the same and the use of the Black Vehicle Crash Image is the same. *Id.* The information contained in the advertisement is the same, although the telephone number is different. *Id.* The photo of the firm's attorneys is also different. *Id.* at 4.

11

Similarly, the Gutter and Siding Images published by YP contain a different telephone number than those published by Print Media, and the Print Media version is larger than the YP version.  Doc. 228-7; Doc. 228-8.  The advertisements are otherwise the same.

With respect to the Home Image, there are two relevant advertisements, both of which are for Abe's.  The first is a two-page advertisement, referred to as a "double truck."  In YP's publication of this advertisement, the color is a grey-scale.  Additionally, on the first page, where the Home Image is used, there is an image with a gate and a family of four with a dog standing in front of it superimposed in front of the bottom right hand corner of the Home Image.  Doc. 228-9 at 4.  In the Print Media version of this advertisement, the color is full color, and the photo of the family of four with a dog in front of a gate shows a different gate, the same family, the same dog, and contains a border around it to appear as an inset photo.  Doc. 228-10 at 4.  The location of the photo in front of the Home Image and at the bottom right corner is the same.  *Id.*  The first page of the advertisement is otherwise the same.  *Id.*

The second page of the advertisement has the most alteration.  In YP's print of this advertisement, the Home Image does not appear on the second page.  Instead, there is an image of a different home.  Doc. 228-9 at 4.  By contrast, Print Media used the Home Image on the second page of the advertisement.  Doc. 228-10 at 4.  An additional change is that in YP's print of the advertisement, there is a text box in greyscale that states "Broken Springs Our Specialty."  Doc. 228-9 at 4.  In the Print Media version of the advertisement, the text box is yellow.  Doc. 228-10 at 4.  This same text-box color change also appears in the second advertisement.

Other than replacement of the photo of the home used in the YP advertisement and the color change, there are no alterations between the second page of the YP advertisement and the Print Media advertisement.  The use of the Home Image is in the same context as the use of the

previous home image, and does not alter the substance or particularly change the appearance of the advertisement.

Regarding the Screen Image, the only difference between the YP published advertisement and the Print Media published advertisement is the size. The content, coloring, and use of the photo is identical between the advertisements. Doc. 228-12; Doc. 228-13.

Here, the Berry License states that

Nothing in this Agreement shall be construed to affect that Digital Media used in end-client's applications (such as directory advertisements) prior to the termination of this Agreement; by way of example, should Digital Media be used in an end-client's directory advertisement prior to the termination of this Agreement, the Digital Media used in the original advertisement may continue to be used in renewals, republications or reprints of the advertisement.

Doc. 157-2 at 4. YPPI argues that because of the changes described above, a genuine dispute of material fact exists as to whether Print Media's use of the images constitutes "reprints" "renewals" or "republications." To determine this, the Court will examine the language of the contract. Under Ohio law, "it is presumed that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Brandon/Wiant Co. v. Teamor*, 708 N.E.2d 1024, 1028 (Ohio Ct. App. 1998). Accordingly, "[c]ourts will not construe contract language that is clear and unambiguous on its face," but will "give effect to the language of the contract." *Id.* However, " 'where the language of a contract is reasonably susceptible of more than one interpretation, the meaning of ambiguous language is a question of fact' to be determined by a jury." *Geczi v. Lifetime Fitness*, 973 N.E.2d 801, 805 (Ohio Ct. App. 2012).

The Berry License does not define the terms renewal, republication, or reprint. *See generally* doc. 157-2. Nor have the parties provided, or the Court located, any pertinent caselaw. Print Media cites to an Ohio case that defines a renewal as "a reconstruction of the entirety or a substantial part of the whole." Doc. 231 at 5 (quoting *Statler Arms, Inc. v. APCOA, Inc.*, 92 Ohio

13

Misc. 2d 45, 63 (Ohio Ct. Common Pleas 1997).  However, that case is inapposite because it deals specifically with obligations for repairing or renewing structures on real property, and the difference between a repair or a renewal.  *Statler Arms*, 92 Ohio Misc. 2d at 63.  In context, the case states: "Repair frequently involves a renewal of a subordinate part.  It is a restoration by renewal or replacement of subsidiary parts of a structure.  As distinguished from repair, renewal is a reconstruction of the entirety or a substantial part of the whole."  *Id.*  When this definition is read in context, it's applicability to this case is dubious.

Accordingly, the Court will look to the definition of these words to determine whether their meaning clearly allows minor changes in advertisements printed for the same end-client.  Renewal is defined as "[t]he act of restoring or reestablishing."  Renewal, Black's Law Dictionary (11th ed. 2019).  Republication is "[t]he act or an instance of publishing again or anew."  Republication, Black's Law Dictionary (11th ed. 2019).  Anew is defined as "[o]ver again; once more; afresh <let's start anew>.  2. In a new and changed form <let's fashion this book anew>.  The word always implies some previous act or activity of the same kind."  Anew, Black's Law Dictionary (11th ed. 2019).

The Berry License is clear that an end-user may continue to use its previously-created advertisement after termination of the Berry License.  Looking at the meaning of the words used, the only reasonable reading of the Berry License allows minor formatting and size changes in reprints, renewals, and republications as long as the reprint, or renewal, or republication is the same advertisement for the same client.  Based on the definition of these words, and common sense, it would be absurd to read the Berry License as disallowing updates to changes of telephone numbers, or reformatting an advertisement to fit in a larger or smaller space.  Indeed, the definition

14

of republication contemplates a freshening in the publication.   Republication, Black's Law Dictionary (11th ed. 2019).

Each of the uses in this case qualify for use by Print Media as a renewal, reprint, or republication based on the clear language of the Berry License.  The largest change is to the double truck advertisement that contains the Home Image.  Nonetheless, the Home Image was used in the same context and manner in Print Media's version of the publication as it was in YP's publication. It was the same advertisement for the same end-user.  It is not a new advertisement.  No genuine dispute exists as to the fact that this type of minor change to an original advertisement by the same client is permitted by the Berry License.  As no genuine issue of material fact exists, Print Media is entitled to summary judgment on YPPI's copyright claim against it, Count II of YPPI's Amended Complaint.  Accordingly, it is

**ORDERED**:

1.      Defendant Print Media LLC's Supplemental Motion for Summary Judgment (Doc. 220) is **GRANTED**.

2.      The Court grants summary judgment in favor of Defendant Print Media LLC. As a matter of law, Defendant Print Media LLC's use of Plaintiff Yellow Pages Photos, Inc.'s, copyrighted images discussed herein did not constitute copyright infringement because the use fell within the scope of the license entered into between Plaintiff and L.M. Berry and Company.

3.      A final judgment in favor of Defendants YP LLC and Print Media LLC will be entered by separate Order.

**DONE AND ORDERED** in Tampa, Florida on June 19, 2020.

Charlene Edwards Honeywell
United States District Judge

15

Copies to:
Counsel of Record and Unrepresented Parties, if any